UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JASON LEOPOLD,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL G. SULLIVAN, in his official capacity as Chief, United States Capitol Police,<br><br>Defendant. | Civil Action No. 25-1026 (BAH) |

**DECLARATION OF AARON WILENSKY**

I, Aaron Wilensky, declare as follows:

1. I have been employed by the United States Capitol Police (the "USCP" or "Department") since September 2023 as a Senior Counsel with the USCP's Office of the General Counsel, General Law Division. Prior to September 2023, I was employed by the USCP as an Associate Counsel with the USCP's Office of the General Counsel from April 2019 until March 2023. Between March and September 2023, I was employed as an Investigative Counsel by the United States House of Representatives.

2. In my capacity as Senior Counsel, I represent the Department in litigation before administrative tribunals and provide general legal advice and assistance to the USCP on many issues including criminal matters, constitutional issues, appropriations and procurement issues, matters concerning tort claims, and Department policy and operations.

3. As part of my duties, I assisted in drafting the USCP's Public Request for Information program and assist in preparing responses to those requests. The USCP is not subject to the Freedom of Information Act (FOIA) because it is part of the Legislative Branch of government but nonetheless has created a Request for Information program that allows the public

to request information from the Department. The Request for Information program also includes an appeals process if the requestor is unsatisfied with the original response to the request for information. To my knowledge, the USCP has not received a Request for Information from the Plaintiff in this case pursuant to the USCP's Public Request for Information program since its inception in 2024.

4. Prior to the USCP's Public Request for Information program, on or around January 28, 2021, the USCP received from Plaintiff a request for certain documents under an asserted common law right of access to public records. Plaintiff requested, among other documents, USCP written directives in effect on January 6, 2021. USCP processed Plaintiff's request and made discretionary releases of two directives that had previously appeared on public dockets: USCP Directive 2053.013 (Rules of Conduct) and USCP Directive 1000.002 (Retrieval of Archived Video). *See Leopold v. Manger* ("*Leopold I*"), 630 F. Supp. 3d 71, 74, 75 n.4 (D.D.C. 2022).

5. USCP located directives in effect on January 6, 2021, of which 36 were determined not to contain "security information" under 2 U.S.C. § 1979 and 65 were determined to contain "security information." Plaintiff subsequently narrowed his request to the 36 non-security-information directives and 65 security-information directives. *Leopold I*, 630 F. Supp. 3d at 75 n.4. *See Leopold v. Manger* ("*Leopold II*"), 102 F.4th 491, 499, 500, 503 (D.C. Cir. 2024) (recognizing the 36 as public records and noting the security-information designations were left undisturbed). As part of the instant litigation, the Plaintiffs attached as his Exhibit C a document entitled Operational Directive "Vehicular Pursuits," dated April 15, 2003. This Directive was not in effect on January 6, 2021. The Plaintiffs also previously obtained USCP Directive 2053.013 "Rules of Conduct." This document was in effect on January 6, 2021.

6. As part of the instant litigation, I prepared an index of the USCP's written directives that were in effect on January 6, 2021, which is attached to this Declaration as Attachment 1.

7. The index includes the Directive number, the Directive title, a brief description of the purpose of the Directive, an indication as to whether the Directive has been deemed "Security Information" and therefore not subject to release in accordance with 2 U.S.C. § 1979, and a list of other reasons why the Directives are not subject to release.

8. In addition to the exemptions in the index, all of the Directives are marked as "Law Enforcement Sensitive." The Law Enforcement Sensitive designation—which is distinct from "security information" under 2 U.S.C. § 1979—is used widely throughout federal, state, and local law enforcement agencies to control and safeguard sensitive information. Within the USCP that designation indicates that such information should only be accessed by those with a need to know and should be reasonably protected from unauthorized disclosure. While not all Directives discuss law enforcement techniques, all the Directives describe Department functions that directly contribute to the Department's law enforcement and security mission. Revelation of the information in these Directives risks compromising that mission because many Department systems are interconnected and interference with one system could impact other mission-critical systems. The Chief of Police has therefore marked all Directives as "Law Enforcement Sensitive."

9. Documents marked as 2 U.S.C. § 1979 Information on the index are considered "Security Information" and their disclosure is therefore prohibited absent express and specific authorization from the Capitol Police Board. The Capitol Police Board is comprised of the House and Senate Sergeants at Arms and the Architect of the Capitol, with the Chief of Police for the USCP serving as an *ex officio* member without voting rights. The Capitol Police Board has not

authorized disclosure of any of these directives.

10. The documents not marked as 2 U.S.C. § 1979 Information are marked as consisting of "Law Enforcement Techniques," "Administrative Practices," and/or "Internal Personnel Practices," as indicated in Column E of the Vaughn Index.

11. Documents marked as "Internal Personnel Practices" are policies that consist of internal personnel procedures, such as internal processes for how to lead tours of the US Capitol or the process employees follow on how to report for work during inclement weather. Public disclosure would reveal nonpublic employee responsibilities, reporting processes, and safety-related requirements. Disclosure would impair the effective administration of those processes and in some cases reveal sensitive information concerning employee conduct, internal reviews or disciplinary matters. For example, knowing how a Capitol tour is led could provide an adversary inside information in order to harm either a tour participant or damage the Capitol itself. Information on how the Department has officers report during inclement weather could enable an adversary to recognize staffing trends during anomalous staffing periods.

12. Directives marked as "Law Enforcement Techniques" are policies that consist of nonpublic operational methods and step-by-step procedures used for the functions described in the Index. Examples of these are internal policies that lay out the initial fact gathering procedures at crime scenes, the way individuals are searched, and the Department's policy on confiscation of ammunition, self-defense sprays, and stun guns. Public release could interfere with law enforcement proceedings, could deprive individuals of their right to a fair trial or impartial adjudication, would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law.

13. Documents marked as "Administrative Practices" are policies each of which describes the specific manner in which USCP carries out one of its internal operations. Public release would reveal internal procedures and operational responsibilities that support USCP's day-to-day functions. Disclosure of that information could facilitate interference by outside actors with the administration of internal Department processes that support its law-enforcement mission. Specifically, the Department's directives are written in such a manner that would permit an outside party to easily identify specific Department employees or systems responsible for day-to-day administration of Department functions and open them to exploitation, harassment, or interference with their duties. Examples of these policies include the use and functions of the Department's purchasing software and the individuals responsible for maintaining it, a description of the individuals responsible for entering information into law enforcement databases, the description of how to arraign arrestees and the location and use of equipment in the USCP's prisoner processing facility, information on how to complete citation-release processing, and the coordination with the DC Metropolitan Police Department on how to use their reports processing system.

14. If these directives were publicly disclosed by this Court, I believe it would impair the USCP's ability to execute its mission of protecting the U.S. Capitol and the Congress. Additionally, granting public access to these Directives could allow individuals with nefarious intent the ability to circumvent the Department's law enforcement and protective missions and expose internal Department information technology systems to potential attack.

15. I reviewed each non-security directive identified in Attachment 1 to determine whether any reasonably segregable information could be released. These policies were written in proper reliance upon sovereign immunity, the protections of security information in 2 U.S.C. §

1979, and the inapplicability of the Freedom of Information Act to the Legislative branch, or any equivalent common-law right to judicial filings. Consequently, the directives are written as inseparable wholes and heavily reference one another. As such, there would be no practical means of segregating portions of the directives to facilitate public disclosure. In every directive, any seemingly benign text is substantially intertwined with sensitive details or would reveal protected information when read in context or cross referenced with other directives. The only material that could be segregated without harm consists of headings, boilerplate, or fragments that would be misleading and would not meaningfully inform the public about USCP policy or operations.

16. I reviewed the records designated as security information under 2 U.S.C. § 1979(a), to determine whether any non-security information could be released. In each directive, any seemingly benign text would expose sensitive security information through cross-referencing or with context, or would not be informative (e.g., headings). The Capitol Police Board has not authorized disclosure of any information in these directives and the USCP lacks discretion to release any parts of these Directives. In any event, based on my review, no non-security information, can be reasonably segregated and released without directly or indirectly disclosing security information.

* * * * *

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 17th day of September 2026.

Aaron Wilensky